DIANNE DAWKINS (NOW DIANNE MARIE DAWKINS SPENCE) v. CHARLIE B. BENTON

No. 7226SC294

(Filed 30 August 1972)

Automobiles § 88— intersection collision — plaintiff and defendant contributorily negligent as a matter of law — directed verdicts proper

In an action to recover for personal injuries and property damage sustained in an automobile accident, the trial court correctly allowed plaintiff's and defendant's motions for a directed verdict where the evidence showed each guilty of contributory negligence as a matter of law, the plaintiff in entering an intersection at an excessive rate of speed without giving proper attention to the traffic light, and defendant in making a turn in front of plaintiff without keeping a proper lookout.

APPEALS by plaintiff and defendant from McLean, Judge, 18 October 1971 Schedule "B" Civil Session of Superior Court held in MECKLENBURG County.

Plaintiff sought to recover of defendant on the grounds of alleged actionable negligence for personal injuries and property damage received when an automobile being operated by defendant collided with an automobile being operated by the plaintiff on Independence Boulevard near its intersection with Hawthorne Lane in the City of Charlotte. In the captions of the case on the original record on appeal filed in this court, the defendant is referred to as "Charlie B. Benton," and in the body of the pleadings the defendant is referred to as "Mrs. Charlie B. Benton." The defendant denied that she was negligent, pleaded contributory negligence, and filed a counterclaim

in which she seeks to recover of the plaintiff on the grounds of alleged actionable negligence for personal injuries and property damage she received in the collision. Plaintiff filed a reply to the counterclaim in which she denied that she was negligent and pleaded contributory negligence.

Plaintiff's evidence tended to show that Independence Boulevard runs generally east and west. Hawthorne Lane runs north and south. Hawthorne Lane, where it intersects the south line of Independence Boulevard, has two lanes for northbound traffic and two lanes for southbound traffic. Independence Boulevard, where it intersects the west line of Hawthorne Lane, has three lanes for traffic going east and a middle or turning lane for eastbound traffic turning north on Hawthorne Lane. Independence Boulevard, where it intersects the east line of Hawthorne Lane has three lanes for traffic going west, and a middle or turning lane for westbound traffic turning south on Hawthorne Lane. Traffic is controlled at this intersection by electrically controlled traffic signals.

Plaintiff approached this intersection at a speed of 35 miles per hour on Independence Boulevard in the middle lane for eastbound traffic. Defendant approached the intersection on Independence Boulevard traveling west and stopped in the turning lane for westbound traffic on Independence Boulevard turning south into Hawthorne Lane. Defendant saw the traffic light in front of her turn yellow and then proceeded to make her turn without further determination of the color of the traffic control signal facing her, and after a car facing her had made a left turn in front of her, and the defendant did not see the plaintiff's car until it collided with her car. Defendant was making this left turn to enter Hawthorne Lane at a speed of about ten miles per hour. The defendant entered the intersection first and at a time when the plaintiff's automobile was about 50 or 75 feet west of the west line extended of Hawthorne Lane. Plaintiff's first witness testified that "neither car stopped or appeared to make an effort to stop" before they collided. The collision occurred at about 8:15 a.m. on 25 July 1969 at approximately the center line of Hawthorne Lane extended and the center of the middle lane extended for eastbound traffic. It was a clear day. Plaintiff testified she was traveling east on Independence Boulevard in the "curb lane, the extreme outside lane," that as she entered the intersection the traffic light turned to yellow and that "(i)n response to your question as to whether

or not I saw the automobile with which my car had a collision prior to the accident, it almost happened simultaneously, because when I entered the intersection her car was moving and turning and that is when I hit her. I don't remember where my car was located the first time I observed the other car prior to impact; all I know is when I entered the intersection she was there, she was moving and turning, and I was there and I hit her."

On cross-examination, plaintiff testified, "It was about a second between the time that I saw Mrs. Benton's car and the time I hit her."

Both parties were injured in the collision.

Defendant's evidence tended to show that plaintiff told the investigating police officer that "as she approached the intersection her light came on caution, that she thought she could make the light, and as she entered the intersection she collided with the Benton car. The legal speed limit out there is 35 miles per hour, and Miss Dawkins told me she was running 40 or 45 miles per hour. The weather was clear at the time. As well as I remember the traffic was extremely heavy."

Another of defendant's witnesses testified that "(t)he weather was clear and the sun was shining. I was going to take my wife to work at the time of the accident, which was about 8:25 or 8:20. The car going straight through on Independence Boulevard (the plaintiff) did not slow down at all as it approached the intersection. Brakes were put on a couple of feet before the accident occurred, but up to that time it maintained its same speed."

Defendant testified that she was traveling west on Independence Boulevard and stopped in the turning lane for traffic turning south on Hawthorne Lane and that:

"While we were stopped there, the light was green, and in a few minutes, or seconds, the light changed to caution and the other car immediately took off to the left. The very best I can remember I saw him turn first and then saw the light turn. I looked to see the light, because I wanted to complete my turn as soon as possible. There was nothing in this lane then; the traffic light was caution.

\*      \*      \*

* * * After I looked at the traffic and the caution light, I didn't watch the light any more to see what color it was, I wanted to watch the traffic to see if it was going to stop or if there would be a break and I could complete my turn. After I saw it was safe to turn, I went ahead. I was planning to go in the outside lane; I had crossed two lanes the best I remember, and I thought I was almost into Hawthorne when I felt a bump. The best I can remember when my car got hit the front end might have been into Hawthorne Street along there. I did not see the car that struck me at all prior to its hitting me. The car struck me on the passenger side where the door connects with the fender and on the front wheel.

In my opinion I was going no more than 10 to 15 miles an hour at the time of impact. * * *

*          *          *

While the light was still green for me, I pulled forward to complete the left turn as soon as I could, as soon as the traffic let up so that I could complete the turn. While I was sitting in the center of the intersection, that is when the light changed. I pulled forward just a little bit — straight ahead, while the light was still green.

As soon as I could after the light changed to yellow, I began to make my left turn, because I was in the center and I knew that traffic would be stopping and the other traffic would be starting and I would be in the center.

As soon as the light turned to caution I began to look to see if the traffic was going to stop so I could go ahead and complete my turn. I didn't want to go out before that. * * *"

At the conclusion of the plaintiff's evidence and again at the conclusion of all the evidence, the defendant moved for a directed verdict against the plaintiff under Rule 50, and at the conclusion of all the evidence, the plaintiff moved for a directed verdict against the defendant's counterclaim. All of these motions were based upon the grounds of a lack of actionable negligence on the part of the movant and contributory negligence as a matter of law on the part of the adverse party. The trial judge allowed the motion of the plaintiff, and also allowed the motion made by the defendant at the conclusion

of all the evidence. From the entry of the judgment dismissing with prejudice the plaintiff's action and the defendant's counterclaim, both parties appealed.

*Calvin L. Brown, and Kennedy, Covington, Lobdell & Hickman by Hugh L. Lobdell for plaintiff appellant.*

*John D. Warren, and Carpenter, Golding, Crews & Meekins by James P. Crews for defendant appellant.*

MALLARD, Chief Judge.

Under the evidence in this case, we are of the opinion and so hold that both of the parties were contributorily negligent as a matter of law, and the trial judge correctly allowed the motions for a directed verdict.

No error.

Judges MORRIS and PARKER concur.